Guys, the Onoiza County Court 30th Division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Good morning, everyone. Please have a seat. People v. Thames. Okay, would counsels that are going to argue this matter please approach the podium and identify yourselves for the record and the party you're representing. Well, I represent Lenore Thames. Defendant DePellin. Thank you. Good morning, Your Honors. Adam Mokes for the people of the state of Illinois. Mokes, did you say? Mokes, yes. Mokes. And what's your name, sir? Robert Markfield. Okay. Markfield. Thank you. All right, so 15 minutes apiece. How much time do you want for rebuttal? I'll take five minutes for rebuttal. Five minutes, okay. Yes, sir. And just as a reminder, this doesn't amplify the microphone. It's just only for recording purposes. For recording purposes. Okay, so speak up loudly so we can all hear you. Yes, sir. Is this volume all right? This volume? Yes, thank you. All right, thank you.  Okay, appellant, you want to proceed? Thank you, Your Honor. May it please the court and counsel, as I said, I'm Robert Markfield. I represent defendant appellant Leonard Thames. Leonard Thames was convicted of first-degree murder based on the 1999 killing of Clayton Kirkland, who had won money in a dice game from Thames and numerous other dice players. Thames was convicted by operation of the law of accountability in the felony murder rule, despite his exceedingly minor role in the criminal activity that led to Kirkland's death. In his instant motion for leave to file a successive post-conviction petition, filed in 2016, Thames asserted a due process violation in that the state violated a bargain entered into on its behalf on March 27, 1999, by Detective Patrick Foley, who was investigating the case. Thames asserted. So I have a question about that agreement. Yes, sir. The purported agreement. Isn't that contradicted by all the pretrial allegations that the defendant raised at trial level? I don't see a contradiction. In his motions to quash and suppress, didn't he argue that he was forced to take a lie detector test? He said that he was forced to take a lie detector test. Foley, in fact, said he volunteered to take a lie detector test, so there was that contradiction. But I don't believe that the fact that he said that he was forced really represents a contradiction. That just might have been the way he perceived it. He felt that he was forced by virtue of the cooperation agreement. But he never says that he agreed to any lie detector test. He says he was forced. So isn't there a contradiction there? You have one person saying he agreed, the officer, but then the other person saying, no, I was forced and I didn't want to take the lie detector test. I think that from the perspective of a defendant scared out of his wits in a police station and with Foley allegedly saying, you know, you have two options here. You're going to be a witness or you're going to go to jail for a long time. He would have perceived that as being forced. And if there is, you know, doubts, maybe there's a contradiction and it doesn't quite line up. I note that Stepinski said clearly cooperation agreements are construed strictly against the state. All right. Well, since we're talking about a contract here, allegedly there was an offer and allegedly there was an acceptance, but what's the consideration here? What consideration was he promised or what consideration was he intended to receive? The consideration that he offered was pretty significant, taking the polygraph for one and also cooperating with the state, which he did. He stayed the night in a police station. Nobody wants to do that. He stayed the night. But ultimately, what was the consideration here for him? So he takes the lie detector test, but the officer of Foley said, or, you know, well, we'll work on reducing whatever sentence if you're found guilty. I mean, there was no consideration here based on what was in the record. I think that there was a fair exchange of consideration. He alleges that he would not be charged in the case in exchange for his cooperation and agreement to take the polygraph. He gave the state something the state should have, according to his allegations, taken as true, given him something in return. Well, where is that in the record? Well, I would say that it's a fair inference from his allegations, his taken as true allegations in his motion for leave and attached affidavit. He said the agreement was he would cooperate with the police, he would take the polygraph, and he would not, in exchange, he would not be charged in this case. It wasn't that he could go home? It was that he wouldn't be charged? Because he did go home, didn't he? No. Yes, Your Honor. That would be, I think, a fair interpretation, if there was just one, but for one critical sentence that appears in his affidavit, and that's that Foley said, you don't need a lawyer. That said, I mean, if the cooperation agreement was to be understood, it's terminable at will by the police. You can go home, but maybe we'll charge you tomorrow or the next, as happened. Now you're adding words. All right? That wasn't communicated. That's not in the record. Well, yes, Your Honor. But, you know, when you're dealing with contractual interpretation, I think that it's fair to make inferences from what happened. And I think that the point to us where we can make those inferences as well, because I don't see that in the record. Where are those inferences that you're arguing in the record? So we could see those as well. In his motion for leave, he said he would not be charged in the case. He also said, and I believe that's in his post-conviction affidavit, that Detective Foley told him, you do not need a lawyer. Read those in conjunction. I don't need a lawyer, so I must. He would think, one would think, like a reasonable contractual interpretation would hold. I think that he would understand that to be permanent. If it was a deal for one day, he certainly would need a lawyer. But he's the one that returned to the police station, right? The police didn't come after him. He returned. Well, he returned to fetch his telephone, his cell phone that he left there, and then to his surprise, suddenly he's under arrest. But Foley lived up to his part of the agreement, allegedly, because he let him go and your client passed the polygraph test. Well, he said he wouldn't be charged. Did that mean not be charged for a day? Would a reasonable defendant leave only a day? That's all I've bargained for? That's the reason I took the polygraph, stayed the night at the police station just so that I could leave and then have 24 hours of freedom? I mean, if that is a reasonable interpretation, then bear in mind that cooperation agreements are construed strictly against the state. If that were a reasonable interpretation, and what to do with the fact that he said in his post-conviction affidavit, Foley told me I don't need a lawyer. Why? I mean, why? I mean, that, in the context of the agreement that he alleges, would indicate that it's a permanent agreement. If it's permanent, certainly he doesn't need a lawyer. It's one day. Yeah, he sure would need a lawyer. He should spend that one day hiring a lawyer. So, if Your Honor is troubled by that, you know, maybe this could go either way. I reiterate the point. The Pinsky Supreme Court cooperation agreements are construed strictly against the state. I mean, we're not asking for a due trial at this state. Just a grant to reverse the denial of the leave to file and allow further factual development of the record. So, do we know what questions were asked and answered during the polygraph test? No, Your Honor. We know that he passed the polygraph test. He made a record of that. But, no, we do not know what questions. I mean, oddly enough, the polygraph only came up sort of briefly in the pre-trial motion, and, of course, not at all at trial. Polygraph tests are notoriously- That was probably a necessary comment. Okay. Anything else? I think I will wait for a rebuttal to- Okay. Then I have one more question. Oh, sure. So, you're making a claim, I believe, that Marion, the appellate court decision, and the owner of the Supreme Court decision in Struttinsky were cases that were decided in 2015, correct? Yes. Yes, 2015. That's correct. But didn't the client file a petition pursuant to 214.01 in 2014? Yes, Your Honor. Okay. So doesn't that kind of raise an issue here? I don't know. I did withdraw the petition, so I don't think that that was a- I mean, there was no final ruling. Right. It was presented to the trial court, and then it was taken back. But it was still presented, and there was still the issue that was raised in the 214.01. So my question is, there's an argument already being made before the cases in 2015. You're saying that 2015 cases are not applicable, right? I'm saying that-well, I'm saying that Stepinski, the 2015 cases are applicable because he would not have a legal basis. I mean, even if he alluded to this cooperation agreement in his PRG, which was never fully litigated because it was withdrawn, he did not have cause as required in the post-conviction, you know, standard until Stepinski. That's the position we're raising. Cause did not arise until Stepinski. Even if he mentions it briefly in his PRG, cause did not arise until Stepinski. Okay. All right. Thank you, Your Honor. State? Good morning, Your Honors. Good morning. I have a note for the people of the State of Illinois. Your Honors, this Court should affirm the denial of Petitioner's request for leave to file a successive post-conviction petition because he failed to identify an objective factor that prevented him from raising his claim in his initial post-conviction proceedings in 2008, and he failed to establish prejudice. Where this Court finds that Petitioner failed to establish prejudice, it need not reach the question of prejudice. So turning to cause, Petitioner – Let me back up for one minute. With regards to this agreement, do you agree that there was or there wasn't an agreement? Your Honor, the record rebuts Petitioner's allegations that an agreement existed to the extent that he argues it in his appellate brief. Petitioner's motion for leave to file indicates that Detective Foley entered into an agreement with Petitioner that if he took him past the polygraph test, he would be released. And to the extent that that agreement was reached, its terms were satisfied, as the circuit court found. Petitioner took him past the polygraph test, and then Detective Foley drove him to a location of his choosing, and as Petitioner framed it in his motion for new trial, quote, turned him loose. But Petitioner's pretrial motion to suppress and his testimony at that hearing rebuts the allegations in his motion for leave to file and rebuts the notion that an agreement existed at all. As Justice Rea, as you indicated, Petitioner claimed that he was, quote, forced to take a lie detector test, that he was held at the police station against his will for approximately 18 hours, and he testified that he was told he was going to take a polygraph test. Moreover, to the extent that Petitioner somehow believed that his agreement with his purported agreement with Detective Foley was this sweeping grant of immunity that extended on infinitely, any notion in that regard should have been discounted when he was Mirandized. After he returned to the police station to retrieve the phone that he had apparently left at his station, Detective Foley advised him of his Miranda warnings, which up until that point he had not done because he was questioning him merely as a witness. But at that point, after he returned to the station, he advised him of his Miranda warnings. He advised him that anything he said could and would be used against him in court and in future proceedings. He also advised him in giving those Miranda warnings that he had a right to counsel. Those Miranda warnings were given to Petitioner three times over the course of his interviews after he returned to the police station. So he should have been under no illusions that he was party to some sort of sweeping grant of immunity or cooperation agreement with Detective Foley. But they're kind of arguing that Officer Foley reneged on his agreement the next day when he shows up at the police station. Well, Your Honor, that goes back to the circuit court's findings, which is that the agreement that Petitioner described in his motion for leave to file and in his affidavit was that if he took him past the polygraph test, he would be released. He would not be charged. And that's what happened. He took him past the polygraph test. He was released. He was, quote, turned loose. And he wasn't charged. It wasn't until later events occurred when Detective Foley learned information from other detectives who had spoken to other witnesses that Petitioner was implicated in this crime and Detective Foley then spoke with Petitioner after advising him of his Miranda warnings that he was actually arrested and charged. So what contract principles do you think we should apply to determine whether or not there was an agreement here or not? Well, to the extent this Court finds that an agreement existed, then it should rely on the findings of the circuit court, which is that the agreement as described by Petitioner, taking his allegations as true, was satisfied in that he took him past the polygraph test and he was released. Turning back to cause, the legal basis underlying the claim that Petitioner seeks to raise in his motion for leave to file existed decades before his initial petition in 2008. Indeed, our Supreme Court decided People v. Starks in 1985. This Court decided Schmidt in 1988. The Second District decided Smith in 1992. These holdings are consistent with the holdings in People v. Marion and People v. Stapinski. Petitioner did not raise Stapinski before the circuit court, so this Court should find that any argument under that case is forfeited. However, even considering Marion and Stapinski, these holdings merely reflect earlier holdings of the Court. They announce no change in the law, and so there is no basis for this Court to find that cause has been newly established merely because the Supreme Court issued a new decision. The decision was consistent with prior case law, and as our Supreme Court has stated, when later cases occur that might provide a petitioner additional helpful support, that alone is not sufficient to establish cause. He must identify an objective factor that prevented him from raising the claim and the case law in this case in his earlier proceedings. He asked this Court to show him leniency because he was a pro se petitioner, but his initial petition was prepared and filed by counsel, as was the instant motion for leave to file a successive post-conviction petition. Counsel did not raise the claim, did not raise the argument. So as far as you know, the initial petition when it was filed by counsel, was it the same counsel that withdrew the petition then later on? I believe so, Your Honor. Okay. So the initial post-conviction petition was not withdrawn. It was the pro se 1401 petition that was withdrawn. I'm sorry. The 1401 that was initially presented, was that the same order that presented it and then withdrew it? No, Your Honor. The 1401 petition was filed pro se. Okay. And petitioners post-conviction counsel, which was the counsel that filed his initial post-conviction petition, withdrew the 1401 petition in anticipation of filing the instant motion for leave to file a successive post-conviction petition. Thank you. Finally, petitioner contends that an appellate court decision cannot give rise to a basis for a petitioner to establish cause. However, this Court has held as recently as last year in People v. Wimberley that appellate court decisions can indeed give rise to a legal basis to establish cause. Where this Court finds that petitioner failed to establish cause, it should affirm the findings of the circuit court need not reach the question of prejudice, but as discussed, petitioner also has failed to make a prima facie showing of prejudice. If there are no further questions, the people respectfully request that this Court affirm the petition. No. Okay. And what relief are you requesting? We are requesting that this Court affirm the decision of the circuit court denying petitioner leave to file a successive petition. Okay.  Thank you, Your Honors. All right. Rubado? Yes, Your Honor. I guess I'll address first whether the claim is rebutted by the record and then going to cause. As for rebutted by the record, the Supreme Court has recently in Robinson set forth the standard, what is rebutted by the record? Rebutted by the record is no fact finder could ever accept the truth of the evidence, suggesting, you know, if his well-pled allegations should simply be taken as true, unless, you know, it is overwhelmingly clear that it is false. Now, what he said in his motion for leave was, and I have written it down, that I would be allowed to go home and that I would not be charged in this case, the second clause being crucial. If it was just I would be allowed to go home, what could I say? He was allowed to go home. But he also said I would not be charged in this case. To the extent that the state relies on the circuit court's finding of what the contract meant, first of all, at this stage, this court should give no deference to those factual findings. This is a motion to leave to file a post-conviction petition. Second of all, I believe that the circuit court was simply wrong, just did not simply apply the Stupinsky standard. Cooperation agreements are construed strictly against the state. Now, in terms of cause, I think that Schmidt, you know, in full acknowledgment, Schmidt does present some problems for the defendant. Stark does not. Stark is a state's attorney's case. State's attorneys have a completely different role in the criminal justice system than police do. And, you know, there's no question that state's attorneys have ultimate charging authorities, and that police, their role is to elicit in one of their major roles, you know, investigate the case and perhaps elicit incriminating information. And for that end, they can even deceive the defendant. So it is not obvious from the fact that the state's attorney can form a cooperation agreement with Stark's that the defendant can, that the police can do so as well, which is Marion Stupinsky. And it is also Schmidt, this one single outlier case. As to that, I would say two things. First of all, I would say that there is a split in the districts. Nichols, paragraph 23, citation in my reply brief, said, quote, here because the change in the law that the defendant cites is not from a higher court, we determined that the defendant did not establish cause. Yes, two recent cases, this court in Wimberley and the third district in Womack, said appellate court ruling is sufficient to establish cause. So there would appear to be a split, and I would respectfully ask that this court follow Nichols. An appellate ruling should not be deemed sufficient. It could potentially be overturned or ruled by the Supreme Court, and it really doesn't change the full legal landscape. You know, there are contradictory decisions of the appellate court. To change the legal landscape, I would say that you need a ruling from the highest authority. Furthermore, Schmidt, and here I refer to sort of the Supreme Court's standard, the language that they used in Hudson, quote, a legal claim, the basis of which is not that Hudson spoke of cause being shown where the defendant asserts, quote, a legal claim the basis of which was not readily available to counsel at the time the direct appeal was taken. Now, Schmidt is just this outlier case. It was not outlier, but sort of standing alone for 25 years until Marion Stepinski, this lone appellate court case that said there was no analog at all in Illinois jurisprudence until Marion Stepinski that was, and Schmidt was overturned. So, you know, there's a red flag for anybody who looks up the case. It was overturned on a different basis. It refers to an agency that doesn't even exist under that name anymore, the Illinois Department of Law Enforcement. So I would say not readily available would apply to Schmidt, but. Okay. Do you want to start ramping it up? Oh, I'm sorry. Yes, Your Honor. But in a sense, Schmidt doesn't matter because we're relying on Stepinski. Thank you, Your Honor. We ask that the court reverse the trial court's decision and grant leave to appeal. Actually, leave to file. Okay. Thank you very much. I want to thank counsels both for a well-argued manner, and the court will take it under advisement, and we are adjourned.